IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

FILED
JUN 21 2002
SAMUEL L. KAY, CLERK
U.S. District & Bankruptcy Court
Southern District of West Virginia

DAVID LAWRENCE DIXON,            )
                                 )
            Plaintiff,           )
                                 )
v.                               )   CIVIL ACTION NO. 5:01-0289
                                 )
PAUL KIRBY, *et al.*,            )
                                 )
            Defendants.          )

### PROPOSED FINDINGS AND RECOMMENDATION[1]
### PROCEDURAL HISTORY AND FACTS

On April 4, 2001, Plaintiff, an inmate at Mount Olive Correctional Complex, acting *pro se*, filed the Complaint initiating this action pursuant to 42 U.S.C. § 1983. (Document No. 1.)[2] Plaintiff names as Defendants Paul Kirby and Paul Rubenstein, past and present Commissioners of Corrections, Howard Painter, then Warden of Mount Olive Correctional Complex, and Patricia Hanshaw, Supervisor of the Complex's mail room. Plaintiff sues each in their official and individual capacities. (Complaint, ¶¶ 2 - 5.) Plaintiff claims that on October 29, 2000, he sent letters to eight companies asking for their catalogs. (Complaint, ¶ 7.) Three of the catalogs which Plaintiff requested were "adult catalogs", and three were "music catalogs." (Complaint, ¶ 8.) It appear that the two further catalogs which Plaintiff ordered offered electronic appliances (Crutchfield) and comic books

---

[1] Plaintiff filed a suit on February 1, 2001, designated 5:01-0098 stating the same facts and circumstances as the predicate for allegations of Defendants' violation of his civil and constitutional rights under 42 U.S.C. § 1983 as he states in this case. That suit was dismissed on March 5, 2001, for Plaintiff's failure to exhaust administrative remedies.

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

(Bud Plant Comic Art). (Document No. 8, Attachments C and E.) In December, 2000, when Plaintiff did not receive the catalogs which he requested, he began filing Grievance Forms and appeals complaining that his mail, the catalogs and adult magazines, was being withheld or refused. (Complaint ,¶¶ 11 - 15.) Plaintiff was informed that Policy Directive 503.00 prohibited inmates' receipt of catalogs and that the adult magazines were examined by prison administration before delivery. (Complaint Attachments G and J at Document No. 8: December 20, 2000, and January 25, 2001, G-1 Grievance Forms) Policy 503 .00 specifies what mail inmates may send and receive. It provides definitions of "Allowable Commercial Pornography", "Obscene Material", and "Private Pornography " at Section III. Section V.M through P provide as follows:

> M. Books, magazines, newspapers and other periodicals will be accepted for delivery to an inmate only if the publication has been sent directly from the publisher.
>
>> 1. This does not apply to the receipt of textbooks and related instructional materials for education programs, which have received the prior approval of the Warden/Administrator/designee.
>>
>> 2. Inmates ordering publications must forward full payment for the subscription with his/her order.
>>
>>> a. Installment/deferred subscription payments are not permitted.
>>>
>>> b. Non-incarcerated persons may give periodical subscriptions or books to inmates by having the publisher mail the publication directly to the inmate.
>>
>> 5. An inmate may receive up to a total of five (5) total subscriptions, with any combination of newspapers or periodicals.
>>
>> 6. Catalogs are not considered periodicals or regular correspondence and therefore are not permitted to be received by inmates.
>>
>> 7. Inmates are not permitted to utilize coupons or advertisements found in publications for free articles or samples to be sent into the

institution.

N. Publications which pose a direct, clear and immediate danger to security or which are obscene by depicting explicit sexual activity may be prohibited.

O. Each institution/facility/center shall establish rules and regulations governing the receipt of packaged materials through the mails, in accordance with the institution/facility/center security needs.

P. Inmates are prohibited from receiving/possessing obscene material, private pornography or pornographic paraphernalia, as defined in this policy (Attachment #3).

(Complaint, Attachment I.)[3] The Policy Directive is inconsistent in the prescribed treatment of "obscene material." Under V.N, it "may be prohibited." Under V.P, it is prohibited. Plaintiff alleges, however, that "obscene material" is allowed (Complaint ¶ 20.), and this is evident from the documents which Plaintiff has submitted. On June 5, 2000, Associate Warden Tim Whittington sent Plaintiff a Memorandum stating, "Mr. Dixon, Policy Directive #503.03, disapproves these magazines. The Warden has since made an exception to this policy and has let these magazines into the facility again." (Document No. 8, Attachment G.) When pornography is received and withheld as prohibited, the inmate designated to receive it is notified and given five business days to appeal to the Warden. (See Document No. 8, Attachment I, Attachment #3.) It does not appear that any process is contemplated for notifying inmates when catalogs have been received and withheld. Plaintiff contends that Policy Directive 503.00 and Defendants' refusal to deliver the catalogs which

---

[3] Complaint Attachment I, which may be found separately filed among the documents at Document No. 8, is the April 1, 2000, version of Policy Directive 503.00. This version was in effect at the time when Plaintiff alleges that Defendants unlawfully withheld his catalogs. Defendants refer to and attach the July 1, 2001, version to their Motion for Summary Judgment. (Document No. 21.) Though the July 1, 2001, version incorporates the language quoted above *verbatim*, it is nevertheless inapplicable in this case since the matters about which Plaintiff complains occurred between approximately October, 2000, and January, 2001.

3

he ordered to him constitute "arbitrary censorship of the mail" (Complaint, ¶¶ 18, 29, 37 - 48.) and a violation of his "First Amendment right to freedom of expression, and Fourteenth Amendment right to due process." (Complaint, ¶ 28.) Plaintiff seeks declaratory and injunctive relief, monetary damages and fees, costs and expenses.

In October, 2001, Summonses were issued and served upon Defendants by certified mail on October 24, 2001. (Document Nos. 11 - 14.) Defendants had 20 days to answer Plaintiff's Complaint and filed their Answer on November 1, 2001, denying Plaintiff's allegations of constitutional violation. (Document No. 15.) On November 14, 2001, United States Magistrate Judge Stanley, having conducted an examination of the file and determined that discovery was unnecessary, entered a Time Frame Order providing a schedule for submitting Motions for Summary Judgment. (Document No. 17.)[4]

On November 30, 2001, Plaintiff filed a Motion for Default Judgment claiming that Defendants Painter and Hanshaw failed to appear and defend. (Document No. 18, pp. 1 and 5.) Defendants' Answer was submitted by Mr. Daynus Jividen, Senior Assistant Attorney General, and addresses all of the allegations made by Plaintiff in his Complaint in behalf of "Defendants"; and yet, Mr. Jividen endorsed it indicating that he is counsel only for Defendant Rubenstein. (Document No. 15, p. 6.) Quite often when they have common grounds in their defense and in the interest of saving money, co-Defendants in civil cases opt for joint representation by counsel. The undersigned assumes that Mr. Jividen represents the Defendants jointly because in answering he addresses each allegation contained in the Plaintiff's Complaint in behalf of "Defendants." Plaintiff's Motion for

---

[4] Magistrate Judge Stanley's Time Frame Order contained notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

4

Default Judgment is therefore without merit.

On January 24, 2002, Plaintiff filed a Motion for Summary Judgment. (Document No. 20.) Citing Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), Plaintiff states as follows:

> The central issue of Plaintiff's Complaint is that Defendants' policy, 503.00, impermissibly infringes on Plaintiff's and Publisher's First Amendment rights because the speech at issue is core protected speech, not commercial speech or speech whose content is objectionable on security or other grounds, and the receipt of such objectionable mail, as defined by Policy Directive 503.00 does not implicate penological interests.

(Plaintiff's Motion for Summary Judgment, pp. 6 - 7.) Plaintiff focuses upon one element of four specified by the Supreme Court in Turner stating that "[a]s a preliminary matter, the neutrality of policy 503.00 is not being challenged, solely because of insufficient evidence to allege otherwise, rather, the core argument is that policy 503.00 is not rationally related to [a] legitimate governmental objective." (Plaintiff's Motion for Summary Judgment, p. 9.)

Defendants did not respond to Plaintiff's Motion for Summary Judgment, but on January 30, 2002, they filed a Motion for Summary Judgment. (Document No. 21.) Defendants claim that they refused Plaintiff the catalogs "(1) Because all or most of the catalogues the Plaintiff seeks contain obscene materials they are denied to him under, DOC Policy Directive Number 503.00 P. . . . and, (2) the catalogues are denied to him as a matter of logistical practicality. If prison inmates were allowed to receive retail sales catalogues on an unlimited, unrestricted basis the prisons' mailrooms would be swamped by the sheer volume of catalogues." (Defendant's Motion for Summary Judgment, p. 3.) Citing the test established by the Supreme Court in Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), Defendants state:

5

> . . . Policy Directive 503.00 (1) furthers the substantial governmental interests of security, order, and rehabilitation in the state's prisons: (2) places limitations on the inmates' First Amendment freedoms no greater than necessary or essential to the protection of the state's interest in maintaining security, order and rehabilitation in its prisons and; (3) provides procedural safeguards for the inmates affected by the rule.

(Defendants' Motion for Summary Judgment, p. 4.)[5] Defendants state moreover that "[a]t Mount Olive Correctional Complex . . . prison officials deal with the catalogue problem by making certain selected retail catalogues (*e.g.*, J.C. Penney, Land's End) available in the prison commissary. Inmates may request specific sales catalogues of their choosing to be stocked by the commissary. If the catalogues do not advertise items which are banned from the prison (*e.g.*, weapons, obscene material) the inmates' requests are accommodated to the greatest extent possible." (Defendants' Motion for Summary Judgment, p. 3.)

Plaintiff filed a Response to Defendant's Motion for Summary Judgment on February 14, 2002. (Document No. 22.) Essentially, he contends that not all of the catalogs which he ordered contained obscene materials and each catalog which did "depict sexual activity is 'commercial pornography' and is permissible, but magazines that does depict 'explicit sexual activity' <u>is also permitted in the institution.</u>" (Plaintiff's Response, p. 6., emphasis in Brief.) He states that the Defendants' reasoning in support of the constitutionality of Policy Directive 503.00 is exaggerated

---

[5] *Procunier v. Martinez* was overruled in part by *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). In *Thornburgh v. Abbott*, the Court upheld the facial validity of Federal Bureau of Prisons regulations restricting inmate access to certain publications applying the "reasonable relationship" test articulated in *Turner*. *Thornburgh v. Abbott*, 490 U.S. at 419, 109 S.Ct. at 1885. In so doing the Supreme Court limited its decision in *Procunier v. Martinez*. Under *Martinez*, the decisions of prison officials respecting inmates incoming and outgoing mail was subject to the "least restrictive means" test, a less deferential test than the "reasonable relationship" test. *Thornburgh v. Abbott* limited the use of the least restrictive means test to regulations governing outgoing correspondence only. *Thornburgh v. Abbott*, 490 U.S. at 401 - 02, 109 S.Ct. at 1875.

insofar as the Policy allows pornography (Plaintiff's Response, p. 7.) and the mail room reads and screens the mail anyway. Finally, Plaintiff asserts that Policy 503.00 contains no procedural safeguards. (Plaintiff's Response, p. 8.)

By Standing Order filed on January 11, 2002, the District Court referred this matter to this Magistrate Judge for submission of Findings and Recommendation for disposition. (Document No. 19.)

## THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. 322 - 23, 106 S.Ct. 2552 - 53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

To prevail upon his claims under 42 U.S.C. § 1983, Plaintiff must prove (1) that a person acting under color of State law (2) committed an act which deprived him of an alleged right,

privilege or immunity protected by the Constitution or laws of the United States. Upon Defendants' showing that Policy Directive 503.00 serves some legitimate penological purpose, Plaintiff bears the burden of showing that the Policy is unconstitutional. Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993) (Restrictions on pretrial detainee's receipt of outside publications was not in violation of his First Amendment rights.)

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Inmates clearly retain the right of free speech under the First and Fourteenth Amendments of the Constitution which includes the right to receive publications. Thornburgh v. Abbott, 490 U.S. 401, 407, 109 S.Ct. 1874, 1878 - 79, 104 L.Ed.2d 459 (1989); Bell v. Wolfish, 441 U.S. 520, 545, 99 S. Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). Publishers have a right under the First Amendment to communicate with inmates. Thornburgh, supra, 490 U.S. at 408, 109 S.Ct. 1874, 104 L.Ed.2d 459; Montcalm Publishing Corp. v. Beck, 80 F.3d 105, 109 (4th Cir. 1996), cert. denied, 519 U.S. 928, 117 S.Ct. 296, 136 L.Ed.2d 215 (1996)("The Supreme Court has clearly recognized a First Amendment interest in those who wish to communicate with prison inmates, although it has expressly reserved the question of how that interest operates in the case of 'mass mailings.'")[6] Inmates have a corresponding legitimate First Amendment interest in communicating with the publishers by subscription. Limitations or restrictions upon inmates' constitutional rights are permissible if they are "reasonably related to legitimate penological interests." Shaw v. Murphy, 532 U.S. 223, 229, 121 S.Ct. 1475,

---

[6] By Notice to Certain Publishers of Catalogs and Order filed on April 27, 2001, (Document No. 6.), citing *Montcalm*, Judge Stanley notified the publishers of each catalog which Plaintiff ordered of this action and gave them the opportunity to participate. None have done so.

8

1479, 149 L.Ed. 2d 420 (2001)( quoting Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 14 L.Ed.2d 495 (1974)); Turner, supra, 482 U.S. at 89, 107 S. Ct. at 2261; Thornburgh, supra, 490 U.S. at 407, 109 S.Ct. at 1878 - 79; See also United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991). The Supreme Court adopted the reasonableness standard recognizing that Courts should generally defer to prison administrators in the establishment of regulations defining and restricting if necessary the rights of inmates. Turner, 482 U.S. at 89, 107 S. Ct. at 2261 - 62. In Turner, the Court identified four factors relevant in consideration of the reasonableness of a regulation restricting inmates' rights as follows:

> (a) whether there is a 'valid, rational connection' between the regulation and a legitimate and neutral governmental interest put forward to justify it, which connection cannot be so remote as to render the regulation arbitrary or irrational; (b) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates, which alternatives, if they exist, will require a measure of judicial deference to the corrections officials' expertise; (c) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, on inmates' liberty, and on the allocation of limited prison resources, which impact, if substantial, will require particular deference to corrections officials; and (d) whether the regulation represents an 'exaggerated response' to prison concerns, the existence of a ready alternative that fully accommodates the prisoner's rights at *de minimis* costs to valid penological interests being evidence of unreasonableness.

Turner, 482 U.S. at 78 - 79, 107 S.Ct. at 2256. Regulations may be adopted which advance both security and administrative interests though they may limit or restrict inmates' constitutional rights. The Fourth Circuit stated in United States v. Stotts, 925 F.2d 83,88 (4th Cir. 1991), citing, Turner, 482 U.S. at 89 - 90, 107 S.Ct. at 2262, that "[t]he logical connection between these interests and the challenged regulations are hardly 'so remote as to render the policy arbitrary or irrational.'" Prison officials must provide minimal procedural safeguards in limiting or restricting inmates' mail, including notice to both inmates and the senders if it does not create an undue burden. See

9

Thornburgh, supra, 490 U.S. at 406, 109 S.Ct. at 1878.

A number of Courts have considered the First Amendment implications arising from prisons' prohibitions against inmates' receipt of catalogs and bulk mailings and performed a Turner analysis. See Sheets v. Moore, 97 F.3d 164, 168 (6th Cir. 1996), adopting the analysis of the Court in Kalasho v. Kapture, 868 F.Supp. 882 (E.D. Mich. 1994); Smith v. Mashner, 899 F.2d 940, 944 (10th Cir. 1990)( A "complaint about undelivered catalogs fails to raise an issue of constitutional magnitude."). In Sheets, a prison regulation prohibiting inmates from receiving "free advertising material, fliers, and other bulk-rate mail except that received from a recognized religious organization sent in care of the institution chaplain" was constitutional because it was "reasonably related to legitimate penological interests under the reasonableness standard of *Turner*." Sheets, 97 F.3d at 168. In Kalasho, a regulation prohibiting inmates from receiving catalogs at the bulk mail rate was found constitutional under a Turner analysis. Kalasho, 868 F.Supp. at 887 - 88.

Assuming therefore that Plaintiff's constitutional rights were implicated, they were subject of course to limitations or restrictions as may be imposed by Defendants "reasonably related to penological interests", and a Turner analysis is required to determine whether or not Defendants infringed upon Plaintiff's rights.

**Rational Connection Between Regulation and Legitimate, Neutral Government Objective**

Policy Directive 503.00 prohibits inmates' receipt of mail order catalogs altogether. The regulation provides for no exception. Policy Directive 503.00 is clearly neutral. It prohibits inmates from receiving all catalogs without regard to content. Defendants claim that the blanket prohibition against inmates' receipt of catalogs serves an administrative interest. If allowed, they say, the sheer volume of incoming catalogs would overwhelm the prison's mail room. While Defendants do not

10

explain how the mail rooms would be "swamped", it is clear based upon the manner in which the prison processes other incoming mail that, if allowed at all, the prison would have to examine and screen all incoming catalogs for any prohibited contents. Additionally, the prison would have to develop and administer a system of notifying publishers and inmates of its decisions to withhold catalogs from delivery based upon content and handle inmates' grievances and appeals. This would of course require the prison to allocate some of its limited staff and monetary resources to the effort. The potential burden upon prison administration posed by the wholesale availability to inmates of mail order catalogs in processing potentially thousands of mail order catalogs by searching through them for prohibited materials and notifying senders and inmate recipients of decisions to withhold and refuse them is obvious. Additionally, the undersigned notes from the decisions of other Courts that there are legitimate security concerns in allowing inmates to receive mail order catalogs.[7] The Fourth Circuit found it perfectly appropriate in United States v. Stotts, supra, 925 F.2d at 87 - 88, for a prison's administration to develop regulations restricting inmates' receipt of mail in anticipation of prospective security concerns and indicated that the same is true in addressing administrative concerns. Accordingly, the undersigned finds that there is clearly a rational connection between the regulation prohibiting inmates' receipt of catalogs and the prison's legitimate and neutral administrative interest. Plaintiff has failed to demonstrate that Policy Directive 503.00's prohibition against inmates' and his own receipt of catalogs amounts to an "arbitrary censorship of the mail" as he alleges in his Complaint. There is no evidence that the Policy itself is arbitrary. Rather, it is

---

[7] *See for example Hause v. Vaught*, 993 F.2d 1079, 1082 - 83 (4th Cir. 1993) (Plaintiff conceded that "Detention Center's policies are rationally related to the legitimate neutral penological interest of preventing the use of publications to smuggle contraband and start fires."); *Kalasho v. Kapture*, 868 F.Supp. 882, 887 - 88 (E.D.Mich. 1994).

rationally related to the prison's legitimate and neutral administrative interests. There is further no evidence that the Policy has been applied arbitrarily in Plaintiff's case. He was prohibited from receiving all of the catalogs which he requested without regard to content. It is immaterial that, as Plaintiff contends, the prison has deviated from the Policy's prohibition against inmates' receipt of "obscene materials." Such materials fall under another category or classification of mail which the prison processes and are therefore prohibited or not on the basis of an entirely different set of penological interests and concerns.

### Alternative Means of Exercising the Asserted Constitutional Right

The record supports the Defendants' statement that the prison makes catalogs available to inmates at the prison commissary. Plaintiff attached a copy of Mount Olive Correctional Complex's Operational Procedure #3.48 to his Complaint. Section III provides for catalog purchases. (Document No. 8, Attachment K, p.3.) Further, Defendants state that inmates may suggest that the commissary stock certain catalogs from which they wish to order. Allowing inmates access to mail order catalogs through the prison's commissary accommodates inmates' rights to receive catalogs and communicate their orders. Clearly, Plaintiff and other inmates at Mount Olive have alternative means of exercising their rights to obtain and purchase from mail order catalogs.

### Impact of Accommodation upon Prison Staff and Resources and Inmates' Liberty

"When accommodation of an asserted right will have a significant affect on . . . prison staff, courts should defer to the informed discretion of correction officials." Kalasho v. Kapture, 868 F. Supp. 882, 888 (E.D. Mich. 1994), citing Turner v. Safley, 482 U.S. 78, 90, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987). Clearly, as appears to be the prison's basis for prohibiting inmates' receipt of mail order catalogs, allowing Plaintiff and other inmates to receive mail order catalogs through

12

the mail as processed through the prison's mail room would significantly impact and tax prison staff and resources. Accommodating Plaintiff's and other inmates' desire to receive mail order catalogs through the mail room services of the prison would plainly require more than a *de minimis* cost in the allocation of staff and resources and is therefore obviously not a reasonable alternative to the prison's accommodation through the availability of mail order catalogs at its commissary.

### Exaggerated Response? – Ready, Cost-Effective Alternatives

In view of the potentially enormous cost of processing mail order catalogs through the prison's mail room, Policy Directive 503.00 cannot be viewed as an exaggerated response to legitimate administrative concerns. Moreover, Mount Olive Correctional Complex has employed a ready, cost-effective and acceptable alternative by making catalogs available to inmates through the prison's commissary. Policy Directive 503.00 is therefore reasonably related to legitimate penological interests and does not violate or infringe upon Plaintiff's constitutional rights.

Plaintiff has presented no facts which support a finding that the limitations and restrictions upon his receipt of catalogs as specified in Policy Directive 503.00 reflect anything other than the legitimate and reasonable administrative interests of Mount Olive Correctional Complex. It is therefore recommended that the District Court conclude that Plaintiff has failed to demonstrate that the prison's refusal to deliver the catalogs which he ordered to him violated or infringed upon any constitutionally protected right.

Accordingly, the undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment, **DENY** Plaintiff's Motions for Default and Summary Judgment, **DISMISS** this case with prejudice and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge Charles H. Haden II. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schonce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Haden and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Plaintiff.

Date: June 20, 2002.

R. Clarke VanDervort
United States Magistrate Judge